## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANET CONNOLLY, EXECUTRIX OF THE ESTATE OF JEFFREY PETERSON, *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, *Defendant*. | No. 3:18-cv-00114 (VAB) |

### RULING AND ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT

In 2018, Jeffrey Petersen sued the United States of America ("Defendant" or "the United States") for alleged medical malpractice at the federally funded Community Health Center in Danbury, Connecticut. Compl., ECF No. 1 (Jan. 19, 2018) ("First Compl.").

On July 26, 2019, the United States filed a suggestion of death as to Mr. Petersen. Suggestion of Death, ECF No. 79 (July 26, 2019) ("Suggest. Death"). Janet Connolly, executrix of the Estate of Jeffrey Petersen ("Plaintiff"), subsequently was substituted as the plaintiff in this case, Order, ECF No. 87 (Oct. 28, 2019),  and a second substituted complaint was filed with the Court, Second Substituted Compl., ECF No. 88 (Oct. 28, 2019) ("Second Sub. Compl.").

Ms. Connolly now moves for leave to amend her Complaint to add a wrongful death claim. Mot. for Leave to Amend, ECF No. 110 (July 10, 2020) ("Pl.'s Mot."). The Government opposes this motion. Objection to Mot. to Amend Compl., ECF No. 114 (July 31, 2020) ("Def.'s Obj.").

For the forgoing reasons, Ms. Connolly's motion for leave to amend the complaint is **GRANTED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Allegations**

"On or about March 3, 2014," the United States allegedly "undertook the care, treatment, monitoring, diagnosing, and supervision of the former plaintiff, Jeffrey Petersen, through its Community Health Center (CHC)." Mem. in Supp. of Mot. for Leave to Amend Compl., ECF No. 110-1 at 2 (July 10, 2020) ("Pl.'s Mem.").

This treatment allegedly "included an interpretation and report on an ultrasound of Mr. Petersen's 'Head/Neck Soft Tissue' by a CHC physician." *Id.* The physician's report "found a '2.7 x 2.4 x 2.1 cm hypoechoic solid mildly vascular mass within the upper right neck adjacent to the submandibular gland,' describing it as a 'lesion indeterminate in nature.'" *Id.* The report allegedly also "noted that follow-up was required, stating that 'neoplasm should be excluded' and 'contrast CT or MRI could be performed if warranted to further assess.'" *Id.* (alterations omitted).

Ms. Connolly alleges that "no follow-up was conducted." *Id.* CHC allegedly "did not . . . inform Mr. Petersen of the results of his ultrasound until" after an appointment on February 24, 2015. *Id.*

Ms. Connolly alleges that "[o]n or about March 20, 2015, Mr. Petersen underwent a CT scan of his neck," which allegedly "revealed 'numerous solid round nodules' in his 'bilateral upper lungs,' which was 'suspicious for metastatic disease.'" *Id.* The CT report allegedly "indicated in an addendum that a mass in the area of Mr. Petersen's right parotid gland 'likely corresponds with the finding on prior ultrasound dated 3/19/2014,' and noted that, 'given the findings within the lungs, this finding is again concerning for metastatic disease.'" *Id.* at 2–3 (alteration omitted).

Mr. Petersen allegedly "was diagnosed with a primary tumor of adenoid cystic carcinoma ("ACC") of the parotid salivary gland and metastatic disease of ACC throughout his lungs." Def.'s Obj. at 3. Then, Mr. Petersen was allegedly "treated with a surgical resection of the primary tumor, radiation at the primary tumor site, and chemotherapy to address the metastatic disease." *Id.*

On June 7, 2020, Mr. Petersen passed away. Pl.'s Mem. at 3.

### a.  Procedural Background

On January 19, 2018, Jeffrey Petersen filed a Complaint against the United States of America, alleging medical malpractice. First Compl.

On April 3, 2018, the United States filed an Answer to the Complaint. Answer, ECF No. 7 (Apr. 3, 2018).

On July 16, 2018, Mr. Petersen moved for joinder of Danbury Hospital, Danbury Radiological Associates, P.C., and Dr. Francis Flaherty. Mot. for Joinder, ECF No. 11 (July 16, 2018).

On August 8, 2018, the Court granted the motion for joinder and ordered that an amended complaint be filed. Order, ECF No. 13 (Aug. 8, 2018).

On August 24, 2018, Mr. Petersen filed his first substituted Amended Complaint. Amended Compl. (Substituted), ECF No. 16 (Aug. 24, 2018).

On October 25, 2018, Mr. Petersen filed a notice of voluntary dismissal of certain parties. Notice, ECF No. 48 (Oct. 25, 2018). The next day, the Court directed the Clerk of the Court to terminate Danbury Hospital, Danbury Radiological Associates, P.C., and Francis Flaherty as defendants. Order, ECF No. 49 (Oct. 26, 2018).

On December 11, 2018, the United States filed an Answer to the Amended Complaint with affirmative defenses. Answer, ECF No. 59 (Dec. 11, 2018).

On July 26, 2019, the United States filed a suggestion of death as to Jeffrey Petersen. Suggest. Death.

On July 31, 2019, the Court administratively closed the case subject to the right of the legal representative of Mr. Petersen's estate to reopen within 70 days of appointment. Order, ECF No. 81 (July 31, 2019).

On September 19, 2019, Plaintiff's counsel moved to reopen the case. Mot. to Reopen, ECF No. 83 (Sept. 19, 2019).

On October 7, 2019, the Court granted the motion and directed the Clerk of the Court to reopen the case. Order, ECF No. 84 (Oct. 7, 2019).

On October 17, 2019, Plaintiff's counsel moved to substitute Plaintiff as a party. Mot. to Substitute Party, ECF No. 86 (Oct. 17, 2019). The Court granted the motion on October 28, 2019. Order, ECF No. 87 (Oct. 28, 2019).

That same day, Ms. Connolly filed a second substituted complaint. Second Sub. Compl.

On October 29, 2019, the parties filed a joint status report. Joint Report of Rule 26(f) Planning Mtg., ECF No. 89 (Oct. 29, 2019) ("Joint Report").

On July 10, 2020, Ms. Connolly moved for leave to amend the second substituted complaint, Pl.'s Mot., and attached a memorandum in support, Pl.'s Mem, and a proposed Third Amended Complaint, ECF No. 110-3 (July 10, 2020).

On July 31, 2020, the United States filed an objection to the motion. Def.'s Obj.

On August 12, 2020, Ms. Connolly replied to the United States's objection. Reply, ECF No. 115 (Aug. 12, 2020) ("Pl.'s Reply").

On November 3, 2020, the court issued an order that the matter would be taken under submission without oral argument. Order, ECF No. 119 (Nov. 3, 2020).

## II.    STANDARD OF REVIEW

Under Rule 15 of the Federal Rules of Civil Procedure, a party may either amend once "as a matter of course within[] 21 days" of service, or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12(b), (e) or (f). Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended pleading. Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id*.; *see also Friedl v. City of N.Y.*, 210 F.3d 79, 87 (2d Cir. 2000) ("[D]istrict courts should not deny leave unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."). The Second Circuit "review[s] the district court's decision to grant a party leave to amend for abuse of discretion." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion. The district court's explanation cited the years of litigation and concluded: '[The] defendants have spent a vast amount of money litigating the sufficiency of various complaints in this case. This is not something unworthy of consideration. It is surely prejudice . . . .' But delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice.") (internal citation omitted).

"Where . . . a scheduling order governs amendments to the complaint, . . . the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

Ms. Connolly seeks to amend her Complaint to add a wrongful death claim. Pl.'s Mot. She argues that her motion for leave to amend should be "freely given" under Rule 15. Pl.'s Mem. at 3. She denies the existence of "good cause" to deny the amendment of her Complaint, *id.* at 5-6, and asserts that amending the Complaint would not prejudice the Defendant, *id* at 6. Specifically, Ms. Connolly argues:

> [T]here can be no suggestion that the proposed amendment betrays any bad faith on the part of the plaintiff, or undue prejudice to the defendant—let alone that the defendant can carry its burden to show either. The plaintiff did exactly what she was supposed to do after the death of her decedent: file a notice with HHS [(Untied States Department of Health and Human Services)] within the statutory one-year period. Once she received HHS's decision not to resolve the wrongful death claim administratively, she promptly filed this request for leave to amend.

*Id.* Ms. Connolly maintains that "denying leave to amend would merely result in a new case based on the same underlying facts and involving the same parties." *Id* at 1.

The United States raises three arguments against amendment: undue delay due to lack of diligence, futility, and undue prejudice. Def.'s Obj. at 9–23. The Court will address each of them in turn.

a. **Undue Delay**

"Whether good cause exists [to amend] turns on the diligence of the moving party."

*Holmes,* 568 F.3d at 335 (internal quotation marks omitted). "A party is not considered to have

acted diligently where the proposed amendment is based on information that the party knew, or

should have known, in advance of the motion deadline." *Christians of California, Inc. v. Clive*

*Christian New York, LLP*, No. 13-cv-0275 (KBF) (JCF), 2014 WL 3605526, at *4 (S.D.N.Y.

July 18, 2014) (quoting *Guity v. Uniondale Union Free Sch. Dist.,* No. 12-cv-1482, 2014 WL

795576 at *2 (E.D.N.Y. Feb. 27, 2014)). "The court may also consider prejudice to the

nonmoving party, the length of delay in filing the amendment, and the explanation provided by

the moving party." *Id.* (citing *Baez v. Delta Airlines, Inc.,* No. 12-cv-3672, 2013 WL 5272935, at

*5 (S.D.N.Y. Sept. 18, 2013)). "While mere delay, absent a showing of bad faith or undue

prejudice, is not enough for a district court to deny leave to amend, the longer the period of an

unexplained delay, the less will be required of the nonmoving party in terms of a showing of

prejudice." *Park B. Smith, Inc. v. CHF Indus. Inc*., 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011)

(internal quotation marks omitted).

The United States argues that Plaintiff's motion for leave to amend should be denied

under Rule 16 because Ms. Connolly allegedly "waited until June 1, 2020, to pursue a wrongful

death claim." Def.'s Obj. at 9. The United States contends that amendments to Ms. Connolly's

Complaint were due by December 27, 2019, or sixty days after she filed the second substituted

Complaint. *Id.* at 7 (citing D. Conn. L. Civ. R., Civ. App'x, Standing Order on Scheduling in

Civ. Cases at 106). Because Ms. Connolly filed her administrative wrongful death claim "eleven

months after [Mr. Petersen]'s death, five months after the deadline to amend pleadings, and

twenty-nine days before the [Joint Trial Memorandum] deadline," the United States argues that Ms. Connolly cannot claim diligence given this delay. *Id*. at 10.

Ms. Connolly replied that she was diligent in pursuing the wrongful death claim. She argues that, in the Joint Status Report after she was substituted as a party, she clearly indicated that she would seek to add a wrongful death claim after pursuing an administrative remedy. Pl.'s Reply at 2–3 ("In view of Jeffrey Petersen's death on July 7, 2019, Plaintiff will be filing an administrative claim against the USA in the near future claiming wrongful death. Once that claim has been properly presented to the agency, [P]laintiff requests leave to file an amended complaint incorporating that claim." (emphasis omitted) (citing Joint Report at 5)). Ms. Connolly contends that properly investigating and developing an administrative wrongful death claim "may take up to two years" and that the completion of the process during a global pandemic in seven months, and within the two-year period provided by statute, indicates diligence. *Id*. at 4.

The Court agrees.

In order to assert a wrongful death claim against the United States, Ms. Connolly had to exhaust her administrative remedies. 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for . . . death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail."). This administrative process provides a statute of limitations of two years. *See* 28 U.S.C. § 2401(b).

The United States argues that Ms. Connolly should have moved to amend within sixty days of filing her second substituted Complaint as required by the local rules. Def.'s Obj. at 7.

8

Sixty days, however, is not adequate to develop, file, and adjudicate an agency claim, particularly when the agency itself is given six months to make a deposition before the claim is deemed final by default. *See* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."). Diligence requires the proposed amendment not be "based on information that the party knew, or should have known, in advance of the motion deadline," *Christian,* 2014 WL 3605526 at *4, but in this case, while Ms. Connolly may have known she wanted to pursue a wrongful death claim before the motion deadline, she could not have known when or how the required administrative process would unfold. Thus, the Court finds Ms. Connolly's filing a motion for leave to amend after pursuit of the agency relief required by statute and made within the timeframe provided by statute to be diligent.

The Court also finds that there is no undue prejudice in the delay in moving to amend as the Court and Defendant were aware of Ms. Connolly's intention to amend her Complaint after pursuing agency review. *See* Joint Report.

Finally, the United States cites to two cases in the Second Circuit where courts have denied movants to amend as "helpful analogues," Def.'s Obj. at 11–12, but both cases discuss delays much more significant than Ms. Connolly's. *See iMedicor, Inc v. Access Pharms., Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013) (denying amendment requested "sixteen months after the deadline for filing an amended complaint"); *Odom v. Matteo*, 772 F. Supp. 2d 377, 406 (D. Conn. 2011) (finding the movant "ha[d] not satisfied the 'good cause' standard and [was] therefore not entitled to additional discovery" after one year to discovery and multiple requests to extend discovery).

### b. Futility

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss [under] Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Sodhi v. Mercedes Benz Fin. Servs., USA, LLC*, 957 F. Supp. 2d 252, 255 (E.D.N.Y. 2013). Accordingly, any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6).

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss

10

for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

In a wrongful death action against the United States, district courts determine liability under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In Connecticut:

> The elements of a cause of action in malpractice for a wrongful death are clear from the explicit language of the [Connecticut] statute, [Conn. Gen. Stat. § 52-555,] which as a statute in derogation of the common law is limited to matters clearly within its scope. The plaintiff must prove not only a violation of a standard of care as a wrongful act, but also a causal relationship between the injury and the resulting death. A causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case.

*Grody v. Tulin*, 170 Conn. 443, 448 (1976) (internal citations and quotation marks omitted). "A wrongful death claim may sound in negligence," and thus, a plaintiff "must prove the essential elements of a cause of action in negligence under Connecticut law, which are duty; breach of that duty; causation; and actual injury." *Roque v. United States*, 676 F. Supp. 2d 36, 42 (D. Conn. 2009) (internal quotation marks and alteration omitted).

The United States argues that Ms. Connolly's proposed amendment is futile, alleging that "Plaintiff will fail to prove causation [(required for a wrongful death claim)] because (1) [Mr. Petersen]'s illegal drug use was an intervening or superseding cause of his death; and (2) [Mr. Petersen]'s own conduct and/or contributory negligence was the proximate cause of his death." Def.'s Obj. at 13–14.

Ms. Connolly argues that "the defendant asks [the] [C]ourt to enter summary judgment on the plaintiff's wrongful death claim before it is even docketed and in the absence of any meaningful discovery on the central issue." Pl.'s Reply at 6. Ms. Connolly contends that "an

11

amendment is not futile simply because the opposing party believes it lacks merit." *Id.* at 6–7

(citing *Hybrid Athletics, LLC v. Hylete, LLC, et al.*, No. 3:17-cv-1767 (VAB), 2019 WL 4143035

(D. Conn. Aug. 30, 2019); *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D. Conn. 2014)).

> The Court agrees.

> In a Rule 12(b)(6) analysis, the court takes all factual allegations in the complaint as true.

*Iqbal*, 556 U.S. at 678. In the proposed Third Amended Complaint, Ms. Connolly has alleged a

"causal relation between the defendant's wrongful conduct and the plaintiff's injuries," *Grody*,

170 Conn. at 448. A determination of futility at this point in the case would require an inquiry

into causation that is "better addressed at a later stage of this case, i.e., once discovery has been

completed and the issue can be fully taken up at summary judgment, with the benefit of a fully-

developed record." *Hybrid Athletics, LLC*, 2019 WL 4143035, at *7 (internal quotation mark

omitted). Thus, the Court does not find Ms. Connolly's proposed amendment to be futile.

### c.  Undue Prejudice

> "Prejudice results when the proposed amendment would '(i) require the opponent to

expend significant additional resources to conduct discovery and prepare for trial; (ii)

significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a

timely action in another jurisdiction.'" *A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F. Supp. 3d 311,

317 (S.D.N.Y. 2014) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275,

284 (2d Cir. 2000)). "Whether a party had prior notice of a claim and whether the new claim

arises from the same transaction as the claims in the original pleading are central to this

determination. *Id.* "The procedural posture of a case, including the stage of discovery and

whether dispositive motions have been filed, may also be weighed." *Id.* (citing *Grochowski v.*

*Phoenix Construction,* 318 F.3d 80, 86 (2d Cir.2003) (upholding denial of leave to amend where

amendment was sought after discovery had closed and while summary judgment motion was pending)). The non-moving party bears the burden of demonstrating that substantial prejudice would result were the proposed amendment to be granted. *Id.* (internal citation and quotation marks omitted).

The United States argues that Ms. Connolly's proposed amendment would be "highly prejudicial to the defendant" because "there is a substantial element of surprise," *id.* at 16; "[t]he proposed amendment [would] require significant additional discovery," *id.*; the proposed amendment would significantly increase Defendant's potential litigation exposure, *id.* at 21; and the proposed amendment would delay resolution of the case, *id.* at 22.

Ms. Connolly argues that the United States cannot assert surprise because "[t]he defendant has known since it joined a pleading on October 29, 2019 that the plaintiff would be requesting leave to amend the [C]omplaint." Pl.'s Reply at 7. As to additional discovery, Ms. Connolly argues that the United States's "description of the additional discovery is overblown," *id.* at 8, and that the United States "will have to conduct the exact same discovery in a newly commenced action if the amendment is rejected," *id.* at 9 (emphasis omitted). Ms. Connolly extends her same additional discovery arguments to the United States's potential exposure and delay arguments, contending a separate wrongful death claim with also prolong litigation and the defendant's exposure is the same "regardless of whether th[e] issue is tried in this case or separately." *Id.* at 10.

The Court agrees.

As discussed above, the United States had notice of Ms. Connolly's intent to pursue an administrative remedy for her wrongful death claim, so its argument regarding surprise is unavailing.

The proposed amendment also comes from the same underlying facts that are at issue in the existing claims.  While additional discovery and delay may be necessary to litigate this claim, it will be more efficient and expend fewer resources to amend the Complaint rather than exclude the amendment and potentially spawn separate litigation.

Accordingly, the Court finds that there is no undue prejudice to the Government necessitating a denial of Ms. Connolly's motion for leave to amend and exercises its discretion to grant the motion. *Foman*, 371 U.S. at 182 ("[T]he grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt . . .").

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to amend the Complaint is **GRANTED**.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of November, 2020.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE